IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUZANNE F. LYNNES,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

    Defendant.

Case No. 6:13-cv-01874-AA
OPINION AND ORDER

AIKEN, Chief Judge:

This action is brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons below, the Commissioner's decision is AFFIRMED.

## Background

On December 30, 2008, Plaintiff protectively filed a Title II application for DIB. On November 29, 2010, Plaintiff also protectively filed a Title XVI application for SSI. Both filings alleged an onset disability date of November 18, 2008. The applications were denied initially and on reconsideration. After requesting a hearing, Plaintiff testified before an Administrative Law Judge (ALJ) and a vocational expert (VE).

1 – OPINION AND ORDER

Shortly thereafter, the ALJ issued a written decision finding that Plaintiff was not disabled as of the alleged onset date. Plaintiff sought review from the Appeals Council, which denied the request for review. Plaintiff then sought judicial review from this Court to review the Commissioner's final decision.

## Standard of Review

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## Discussion

Plaintiff identifies three errors by the ALJ: 1) improperly discounting Plaintiff's testimony; 2) improperly discrediting the medical opinions of Dr. Falk, Dr. Lechnyr, and Dr. Brewster; and 3) not finding Plaintiff's fibromyalgia and pain disorder to be severe impairments at step two of the evaluation process. Plaintiff contends that these errors require a remand for payment of benefits. The Commissioner argues that the ALJ's decision is supported by legally sufficient reasons and that this Court should affirm the Commissioner's decision.

### I. The ALJ's Evaluation of Plaintiff's Credibility

Plaintiff first contends that the ALJ improperly evaluated her testimony. Once a claimant produces medical evidence of an impairment, the Commissioner may discredit the claimant's testimony as to the severity of symptoms only with clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In making these determinations the ALJ is allowed to use ordinary techniques used in the evaluation of credibility. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). For example, "[i]f a claimant is able to spend a substantial part of

3 – OPINION AND ORDER

[her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r. of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ may also consider inconsistent or unexplained claimant testimony, failure to follow a course of treatment or recommendations of doctors, evidence of self-limiting behaviors, and a claimant's work history. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *see Molina*, 674 F.3d at 1112.

Plaintiff alleges that she has severe limitations such as her legs going numb, crying spells that last for hours at times, problems focusing, and physical limitations stemming from her shoulder, knee and foot. Tr. 33, 37, 38, 40. The ALJ provided several reasons for his adverse credibility finding. Among these are: 1) inconsistencies between her alleged functional limitations and her daily activities; 2) the level of specificity Plaintiff provided about her limitations; and 3) a lack of medical evidence in the record to support the functional limitations claimed. Tr. 69-71. I find that the ALJ provided legally sufficient reasons for his evaluation of the Plaintiff.

The record supports the ALJ's finding that Plaintiff made several inconsistent statements regarding her limitations at varying points in the disability process, and that these

4 – OPINION AND ORDER

limitations are inconsistent with her daily activities. For example, the ALJ noted that Plaintiff stated she was able to perform household chores such as laundry, preparing meals, feeding animals, and babysitting her step children. Tr. 70, 232. The ALJ noted that Plaintiff doesn't require rest or laying in bed and, in fact, sits the majority of the day without changing positions. Tr. 70, 230-232. Additionally, the ALJ noted that while Plaintiff's impairments resulted in limitations, none of her burdens were unusual or required unusual accommodations or time-consuming treatment. See *id*. Finally, the ALJ noted that Plaintiff had reported that she was able to drive herself to doctor appointments, participate in work-like activities, and apply for jobs (however, Plaintiff stated she could not perform these "sit jobs" due to her level of education). Tr. 32, 70, 227, 233, 583.

After her claim was denied, the ALJ noted that Plaintiff alleged far more severe limitations that were inconsistent with the medical evidence and her prior statements. For example, Plaintiff alleged she could no longer hold her bladder. Tr. 258. However, Plaintiff previously reported to doctors that she had no problems controlling her bladder. Tr. 532, 537. Plaintiff also alleged she was unable to drive. Tr. 258. Yet, Plaintiff stated she was able to drive prior to that report, tr. 233, and, within that same report, stated that she should not be driving

5 – OPINION AND ORDER

because she is on medication. Tr. 263. Likewise, Plaintiff alleged she could no longer wash her hair or do dishes. Tr. 263. At the same time, Plaintiff indicated cleaning up dinner every night, explicitly stated that she does the dishes as daily chores, and that she has no trouble with taking care of her hair. Tr. 230-32. Additionally, Plaintiff described dropping items constantly because she is unable to grip things, tr. 258, despite later stating she needed hand rails to use the bathroom. Tr. 263. Regardless, medical evidence reflects she has at least 40 pounds of grip strength in her weakest hand. Tr. 567.

Further, Plaintiff claims that her medication makes her forgetful; however, she failed to list this as a side effect of any of her medications. Tr. 258, 261-62. Finally, Plaintiff alleged that she can only sleep for one hour at a time, causing her to cease to function after two days because she is delirious, cannot "comprehend [or] read simple things," or hold a conversation. Tr. 231. However, in the same report, she states that her daily activities include visiting with her husband, making phone calls, reading the paper and the mail, going to therapy appointments, and sleeping for nine hours. Tr. 230.

The record also supports the ALJ's finding that Plaintiff's credibility is weakened by her lack of specificity regarding her limitations and their causes. For example, an emergency room physician described her as a poor historian. Tr. 536. Similarly,

6 – OPINION AND ORDER

Dr. Brewster reported that, while taking Plaintiff's history, she had to be redirected, asked questions multiple times, and had difficulty following directions. Tr. 564. For example, when asked "what was difficult to do," she answered that she was limited. Tr. 561. When repeatedly asked for more clarification, she stated that her leg would not "let her go," she had a "muscle missing," and she had a limp. *Id*. Notably, Dr. Brewster later recorded that Plaintiff transferred on and off the examining table without difficulty and walked without a limp. Tr. 564. When asked what limitations this presented, she stated that she could not jump. *Id*. Dr. Brewer also stated that it was uncertain why Plaintiff did not follow up on her problems despite their chronic severity. Tr. 568. The ALJ also noted that Plaintiff failed to report alleged conditions that either were recent or would seem to be disabling and serious. Tr. 70. This, he noted, detracted from her credibility because the lack of reporting was inconsistent with somebody who was disabled. *Id*.

Finally, the record supports the ALJ's finding that the medical evidence did not support Plaintiff's claimed limitations. The ALJ noted that it was difficult to attribute Plaintiff's shifting descriptions of her limitations to clinical changes, because little or no medical evidence indicated that her condition was worsening or that she was as limited as she alleged. Tr. 70. Apart from the evidence cited above, the ALJ

7 – OPINION AND ORDER

noted that most of the Plaintiff's medical records fail to show abnormal findings. Tr. 71. For example, the ALJ noted an EMG examination in which the doctor stated that the normal findings indicated the abnormal findings of another test were due to technical difficulties, and that no evidence of sensory neuropathy was present. Tr. 607. Other exams reflected normal ranges of motion and an ability to conduct daily activities, with pain primarily associated with reaching overhead. Tr. 380. Others exams noted a normal gait. Tr. 585, 698. Further, the medical evidence indicated Plaintiff's range of motion was normal and less limited and unguarded when she was distracted. Tr. 293. Finally, exam notes indicated that she reported continued decreased pain and better ranges of motion. Tr. 380-82, 560. Thus, because the ALJ provided clear and convincing reasons supported by the record, this Court upholds the ALJ's evaluation of Plaintiff's credibility.

II. **The ALJ's Evaluation of the Doctors' Opinions**

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Falk, a treating physician, Dr. Lechnyr, an examining psychologist, and Dr. Brewster, an examining physician.

> The opinion of an examining physician is… entitled to great[] weight…. As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician[]

8 – OPINION AND ORDER

> [a]nd[,] like… a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons…supported by substantial evidence in the record.

*Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

It has long been established that a treating or examining doctor's opinion on the ultimate question of disability is not afforded conclusive weight. *See e.g.*, *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); 20 CFR § 404.1527(d)(1). Rather, the determination of disability is reserved for the Commissioner. *McLeod*, 640 F.3d at 885. This is because impairments are "purely medical condition[s]" while "disabilit[ies] [are] [] administrative determination[s] of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity." *Id*. When evaluating medical opinions, an ALJ may look to whether these opinions are based upon rationales or objective testing. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2011). "When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Id*.

### 1) Dr. Lechnyr's Opinion

Plaintiff argued that the ALJ did not provide sufficient reasons to reject the opinion of Dr. Lechnyr. Dr. Lechnyr

9 – OPINION AND ORDER

concluded that Plaintiff had a list of "problem issues," or diagnoses, but had more limited diagnoses of fibromyalgia, somatization disorder, and reoccurring pain issues. Tr. 719, 728-29, 731-33. The ALJ rejected Dr. Lechnyr's medical opinion because it was not supported by the record and consisted of vague conclusions and "irrelevant" material or general information. Tr. 71-72. The ALJ specifically noted the report was "obscurantism by design and [was] meant to frustrate a reader's ability to determine the clinical findings and basis for [Dr. Lechnyr's] conclusions." Tr. 72.

To support this point, the ALJ noted that the report included pieces of information that were unnecessary or irrelevant like, for example, his qualifications at both the beginning and end of the report included the fact that he is Lutheran. *See* tr. 71, 718-751. Moreover, the ALJ noted that Dr. Lechnyr described subjective testing methods and subjective descriptions of Plaintiff's symptoms, oddly intertwined with general information regarding the value of these tests or the medical condition of fibromyalgia. *Id*. However, Dr. Lechnyr conducted little, if any, objective testing (most testing consisted of self-rating assessments such as the McGill Pain Questionnaire, Personality Adjective Checklist Test, and Human-figure pain drawing test) but he nonetheless concluded that Plaintiff was disabled from her limitations. *Id*.

10 – OPINION AND ORDER

Dr. Lechnyr also completed a "mental/physical/pain functional residual capacities report." Tr. 735-41. However, Dr. Lechnyr provided similarly vague definitions of the rating terms, check-boxed ratings for various categories, and a set of final conclusions without reference to any particularized evidence he considered. *See id.* Dr. Lechnyr indicated that Plaintiff exhibited a number of moderate limitations, including concentration and memory issues, which contradicted a mental status examination, in which he found Plaintiff had normal concentration, memory, logical thought processes, and fair attention span. Tr. 722, 735-41.

Finally, as the ALJ noted, Dr. Lechnyr provided often vague descriptions of Plaintiff's limitations. Tr. 72, 718-751. For example, Dr. Lechnyr stated that Plaintiff "is also having a major problem struggling with Recurrent Major Depressive Disorder problems that have resulted in her having significant problems in functioning." Tr. 733. However, Dr. Lechnyr does not describe her limitations or her problems with functioning. *Id.* Thus, the ALJ provided legally sufficient reasons to reject the opinions of Dr. Lechnyr.

**2) Dr. Falk's Opinion**

The ALJ rejected Dr. Falk's opinion because it was offered with little basis in evidence, was not based in his specialty, and answered only the ultimate question of disability. Tr. 72.

11 – OPINION AND ORDER

In his final report, Dr. Falk checked a box stating he concurred with Dr. Lechnyr and then listed four ailments: 1) left shoulder decompression; 2) right knee ACL tear; 3) chronic radiating low back pain; and 4) left "foot pain and surgery." Tr. 753. Dr. Falk also stated that Plaintiff's last attempt at work failed due to her physical and emotional issues, and that he did not believe Plaintiff was capable of working. Tr. 754. Assuming this opinion was meant to incorporate Dr. Falk's prior treatment notes, those notes provide little support for his opinion, as found by the ALJ.

First, many notes indicate conclusory diagnosis of anxiety and depression; conditions that, even if supported with objective testing, are not within Dr. Falk's specialization as a family practitioner. Second, the physical and mental symptoms listed by Dr. Falk appear to be based upon Plaintiff's self reports. When Dr. Falk completed objective tests, they appeared negative and without abnormalities. Tr. 645-56. Thus, the ALJ provided legally sufficient reasons for rejecting the opinion of Dr. Falk. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming an ALJ's decision when treating physician's opinion was based on subjective reporting, was unsupported by the medical evidence and comprised of box checked conclusions or those that were conclusory and brief).

    3) **Dr. Brewster's Opinion**

12 – OPINION AND ORDER

Case 6:13-cv-01874-AA    Document 16    Filed 12/04/14    Page 13 of 15

Plaintiff argues that the ALJ erred in failing to address Dr. Brewster's opinion that Plaintiff had occasional restrictions on reaching, grasping, and pulling. The Commissioner concedes the ALJ erred but argues it was harmless because the jobs relied upon at step five comport with these limitations. I agree.

"'Occasionally' means occurring from very little up to one-third of the time." SSR 83-10. If Plaintiff had "occasional restrictions," she would be restricted from those actions for up to one-third of the time. Based upon VE testimony, the ALJ found that Plaintiff was able to perform her past work as a machine operator (D.O.T. 669.685-098) and drier (D.O.T. 563.685-022), or other work as a housekeeper (D.O.T. 301.687-014), and an assembler (D.O.T. 739.687-030). Tr. 73-74. All of these jobs require "frequent" reaching, grasping, and pulling. "'Frequent' means occurring from one-third to two-thirds of the time." SSR 83-10. If Plaintiff is restricted from performing these functions for up to one-third of the time, these jobs accommodate that limitation. Thus, the ALJ's error was harmless.

### III. The ALJ's Evaluation of Impairments

Finally, Plaintiff contends that the ALJ did not properly evaluate all of her impairments at step two. Plaintiff argues that the ALJ's failure to list Plaintiff's fibromyalgia "tainted [the ALJ's] credibility assessment, and his consideration of the

13 – OPINION AND ORDER

medical opinions." Pl's. Br. 19. Plaintiff further argues that the ALJ's "failure to include the somatic conditions has caused him to improperly disregard that these conditions are in themselves disabling and severely limiting." *Id*. Regardless of whether the ALJ erred at step two, any error was harmless.

Failure to label a condition as severe is considered harmless error if the claimant is not prejudiced by the ALJ's failure. *See Burch v. Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005). Plaintiff was not prejudiced at step two because the ALJ found Plaintiff had severe impairments and, thus, moved to step three. *See id*. at 682 (an error at step two does not prejudice the claimant if that claimant continues to step three). Plaintiff had the burden of showing that combinations of impairments, severe or not, met or were equivalent to a listing. *Id*. at 682-83. Apart from stating the ALJ erred and these conditions are themselves disabling, Plaintiff offers no evidence or argument that these impairments equal a listing.

Moreover, as discussed above, the ALJ properly evaluated Plaintiff's credibility and the opinions of Dr. Falk and Dr. Lechnyr, the physicians who diagnosed Plaintiff with fibromyalgia and somatic conditions. Thus, despite not considering those conditions severe, they were considered and evaluated in the step four determinations. As discussed previously, the ALJ provided sufficient reasons to support his

14 – OPINION AND ORDER

findings and used these to determine Plaintiff's RFC and the limitations presented to the VE. Thus, because the ALJ provided the VE with a hypothetical including the limitations he deemed credible, Plaintiff was not prejudiced.

## Conclusion

The ALJ did not error in his adverse credibility finding or his evaluation of Dr. Falk's and Dr. Lechnyr's opinions. While the ALJ did error in respect to Dr. Brewster, that error was harmless. Therefore, the Commissioner's decision is AFFIRMED.
IT IS SO ORDERED.
Dated this 4th day of December.

Ann Aiken
U.S. District Judge